HOUSE OF LLOYD, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 85-04-00508

(Dated May 18, 1989)

*Herbert Peter Larsen* for plaintiff.

*John R. Bolton,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, (*Mark A. Sochaczewsky*), Civil Division, United States Department of Justice, for defendant.

## Opinion

RESTANI, *Judge:* This matter is before the court on plaintiff's motion for summary judgment. The issue before the court is whether for tariff purposes a lighted "angel shaped" decoration for the top of a Christmas tree is a doll or a species of electrical article.

## Facts

The merchandise at issue was imported from Taiwan in 1983 and 1984. It is described on the cardboard box in which it is packaged for sale as a 10 Light 9″ Angel Tree Top with a 72 inch wire cord.[1] The package also indicates that the merchandise has a "UL[2] listed

---

[6] If in this case, actual home market sales were being used as the basis for foreign market value, and early payment discounts were also given on those sales, ITA, for the reasons discussed *supra,* could treat discounts as reductions in price on both sides of the fair value equation. Here, however, the only "prices" used are U.S. prices, thus home market "prices" cannot be reduced. Although *Timken Co.* v. *United States,* 11 CIT 786, 673 F. Supp. 495, 507–8 (1987) indicates that circumstances of sale adjustments may be made even when foreign market value is based on constructed value, *see also Funai Elec. Co.* v. *United States,* 13 CIT 396, Slip Op. 89–65 at 5–10 (May 15, 1989), it does not stand for the considerably broader proposition that any type of calculation or adjustment that can be made to price-based foreign market value must also be made to constructed value-based foreign market value.

[1] The device is actually somewhat less than 8″ high.

[2] UL is an abbreviation of Underwriters Laboratory.

safety fuse plug for current overload protection." The portion of the cord which is within the "angel" contains small colored lights of a type normally found on Christmas decorations. The parties agree that the merchandise is self-illuminating and is used to adorn the tops of Christmas trees.

The merchandise consists of a plastic "head" with a light in it, wire and gauze "wings," a paper "collar," a red ribbon "bow" on the "collar," two arm-like projections made of wire, paper and gauze, each of which holds a light, a wire spring-like projection beneath the "head," presumably used to secure the device to the Christmas tree top and a wire and gauze conical form, suggesting a gown, in which there are seven lights. The entire device bears a suggestion of a humanoid, but except for the "head" there is not much about the device which is doll-like.[3]

The merchandise, however, was classified by Customs under item 737.24, Tariff Schedules of the United States (TSUS), as "Dolls (with or without clothing): Other [than stuffed]." Plaintiff makes a claim for classification under item 688.43, TSUS, "Electrical articles * * * not specially provided for: Other," and, alternatively, for classification under item 688.10, TSUS, "Insulated * * * electrical conductors * * * With fittings: Christmas-tree lighting sets, with or without their bulbs, and wiring sets similar thereto."

## ARGUMENT

Plaintiff relies primarily on the case of *Janex Corp.* v. *United States*, 80 Cust. Ct. 146, C.D. 4748 (1978). *Janex* involved "Raggedy Ann and Andy Nite Timers." The articles were described as:

> * * * plastic figures, approximately 8¼ inches in height, representing the form and features of the well-known storybook characters, Raggedy Andy and Raggedy Ann. The figures have a hollow interior which accommodate two "D" size dry cell batteries, electrical switches, wiring, a bulb and other electrical components for illumination through the top of the figures. The articles are designed to light automatically when lifted off a surface (i.e., a dresser top), and switch off when set down again. This operation is accomplished by a pressure switch, which protrudes through the figure's feet when the article is lifted off a surface, and is depressed when the figure is set down again. Additionally, each figure has a pull-cord switch with a ring attached by which the light may be turned on for a brief period and then automatically turned off. Activation of the pressure or pull-cord switches, in addition to making the light turn on and off, also causes the figure's eyes to raise and lower simultaneously with turning the light on and off. (Footnote omitted.)

80 Cust. Ct. at 148. The articles were found to be more than dolls and were classified as electrical articles.

---

[3] A porcelain "headed" article of similar purpose, but of more substantial materials was submitted as an exhibit. It is not accepted by the court as it does not represent the imported merchandise at issue.

The defendant's argument is essentially that the *Janex* articles served an illumination function that is more substantial than any such function which may be attributable to the "tree toppers." Defendant states that the lights within and on the tree topper illuminate the tree topper itself and the parties appear to agree that the tree topper does not illuminate the surrounding area to any significant degree.[4] Defendant further argues that because the main purpose of the tree topper is decorative and because dolls may be decorative objects, rather than only playthings, the tree topper is not more than a doll.

Basically, defendant views this article as a lighted doll. The court cannot accept a blanket rule that every decorative article with some doll-like feature is simply a doll. This article consists of a string of lights which is worked into the angel shape and head and attached to the wire tree top holder to make the lights suitable for the top of the tree as opposed to encircling the tree. In *Janex,* the court found that the doll-shaped covering for the night light did not make the article more than an electrical article because such a "housing" is not inimical to the broad meaning of "electrical articles." 80 Cust. Ct. at 156. This electrical article, that is, the tree topper, is intended to be decorative, rather than a means of environmental illumination, and the decorative aspect of the electrical article is enhanced by the angel-shaped housing.

The court also notes that one cannot simply remove the electrical parts and create a doll. Physically one would have to destroy the "angel" housing to remove the electrical parts. Assuming one could detach the lights from the "angel" housing without harming the housing, it is difficult to say what would be left. The commercial value of the "angel" would seem to be negligible, apart from its function as part of the *lighted* tree top decoration.

As the court has determined that this article is not a doll or is more than a doll, the next question to be answered is whether the article is a specific type of electrical article, that is, a Christmas tree lighting set, or whether it is more, in which case it would be categorized as a non-specific electrical article. The category "Christmas-tree lighting sets" under item 688.10, TSUS, is a subcategory of "Insulated * * * electrical conductors * * * With fittings." A subcategory cannot encompass an article which is not in the broader category of which it is a subset.[5] Neither party has briefed in any detail the issue of whether this merchandise is beyond the meaning of "Insulated * * * electrical conductors * * * With fittings," but plaintiff appears to accept that the angel shape or "housing" and tree top attachment makes this article more than "Insulated * * * electrical

---

[4]The "angel" lights may also illuminate the tree. The parties do not explain why this is essentially different from the illumination function in *Janex.* The court presumes that any illumination of the tree is incidental. In any case, the parties agree that the articles are not "illuminating". Thus, they are not classifiable, along with other metal environmental lighting articles, under item 653.37, TSUS.

[5]General Interpretative Rule 10(c)(i), TSUS, states "a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby."

conductors * * * With fittings." *See* Plaintiff's Supporting Memorandum at 7. Defendant's only relevant statement as to this potential classification is "* * * we would not characterize the electric lights as a Christmas tree lighting set." Defendant's Memorandum at 3, note 2. Needless to say, neither party has shown much enthusiasm for classification under item 688.10, TSUS. The court also concludes upon examination of the article that it is either more than, or something other than, "Insulated * * * electrical conductors * * * With fittings" or a "Christmas-tree lighting set." Accordingly, the merchandise at issue is found to be classifiable under item 688.43, TSUS, other non-specific electrical articles.